Patricia M. Stojak, Widow of Fred S. Stojak, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Bunge Corporation, Respondents.

Argued February 2, 1981, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Jerome Jaffee*, with him *Albert J. Olizi, Jr.*, and *Robert E. Cherwony*, of counsel: *Sidkoff, Pincus, Greenberg & Green, P.C.*, for petitioner.

*David F. Kaliner*, for respondents.

OPINION BY JUDGE CRAIG, March 6, 1981:

Claimant-widow Patricia Stojak appeals the dismissal of her fatal claim petition by the board,[1] which affirmed the referee's conclusion that her husband's death was not related to and did not arise in the course of his employment.[2]

Decedent, who was a laborer for Bunge Corporation, had reported to work at 8:00 p.m. on December 23, 1976 at the company plant. He was killed on December 24, 1976 at 2:45 a.m., when his car went off the highway and struck a utility pole. Decedent was intoxicated at the time of the accident, with a blood alcohol level of .203%.

The claimant-widow alleged that the decedent's death was related to and arose causally in the course

---

[1] Workmen's Compensation Appeal Board.

[2] Section 301 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411, provides in pertinent part:

(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employee, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. . . .

of his employment because he had been drinking liquor provided by Bunge on its premises before his fatal accident.

Bunge customarily gave a bottle of liquor to each employee as a gift on the last day of work before Christmas, and allowed the employees to leave early while paying them for a full eight hours. Bunge repeated this practice on the night in question, but the witnesses who testified before the referee differed sharply as to whether the employees remained on the premises to drink.

Claimant offered the testimony of two Bunge employees to support her contention that Bunge permitted her husband and other employees to consume the gift liquor on its premises. Tony Nasobkow, a shop steward who worked the decedent's shift, stated that around 9:30 p.m. that evening, the supervisor began calling the employees into the office to give each of them a fifth of Seagrams V.O. He testified that several employees, including decedent, began drinking in the lunchroom until the supervisor told them that they could leave, which was around 11:30 p.m. However, he said that the decedent did not leave until 1:30 a.m.

Nasobkow testified that the company's practice was to allow the employees to stay after they received their liquor because the company offered the premises as "a place to have a party with all of the workers." He acknowledged that the company prohibited drinking on the premises; a rule stating that drinking in the plant was grounds for discharge was posted over the time clock.

Another employee, who worked the morning shift on December 23, testified that the employees on that shift drank a toast in the lunchroom after the supervisors gave each of them their bottle. He recalled an incident which occurred the year before when a super-

visor, who had been drinking the gift liquor, passed out in the plant locker room.

A plant supervisor and another employee, testifying for the employer, directly contradicted Nasobkow's statements. Robert Crockett, the supervisor on decedent's shift, disputed claimant's contention that the employees began drinking the liquor on the premises; he stated that he saw no one in the lunchroom drinking after the gifts had been distributed. Although his supervisors had instructed him to distribute the liquor to the men, wish them well, and see them off the premises, he did not say anything specific to the men about leaving the plant. However, he claimed that as he handed a bottle to each employee, he said "Merry Christmas, Happy New Year, and good night." When he left around 11:15 p.m., he said no cars were in the parking lot and no one remained in the building except the janitor.

William Reilly, a grain handler who had not worked on decedent's shift because he was sick, said that when he came to the plant to pick up his gift at approximately 11:00 p.m., he saw no one in the lunchroom and no cars in the parking lot.

The referee, in concluding that the decedent's death did not arise in the course of his employment, found as a fact that there was no credible, competent evidence to indicate that decedent consumed any alcohol on the premises. The referee also found that the employer did not "invite, initiate, sponsor, support or encourage the employees of the 8:00 p.m. shift to remain on the [employer's] premises after they received their Christmas gifts."

Whether decedent was in the course of his employment when he died is a question of law based upon the facts as found by the referee. *Nationwide Insurance Co. v. Workmen's Compensation Appeal Board*, 21 Pa. Commonwealth Ct. 243, 344 A.2d 756 (1975).

The findings here support the referee's conclusion, and we cannot overturn those findings in the absence of a capricious disregard of competent evidence. *Cooper v. Workmen's Compensation Appeal Board,* 49 Pa. Commonwealth Ct. 488, 411 A.2d 859 (1980). Although the referee could have found that the employees drank the gift liquor on the plant premises, he chose to believe the contrary evidence. That exercise of discretion does not constitute capricious disregard.

Even though we might have reached a different conclusion based upon the same record, *Redmond v. Workmen's Compensation Appeal Board and Anthony Fashions,* 54 Pa. Commonwealth Ct. 162, 420 A.2d 766 (1980), we are bound by the referee's resolution of testimonial conflicts and his assessment of the witnesses' credibility. *Cooper, supra.*

Accordingly, we affirm.

## ORDER

AND Now, this 6th day of March, 1981, the order of the Workmen's Compensation Appeal Board, No. A-77268, dated February 14, 1980, is affirmed.